IN THE CASE OF

UNITED STATES, Appellee

v.

Charles W. DAVIS, Lieutenant Commander
U.S. Navy, Appellant

No. 98-0497

Crim. App. No. 9600585

United States Court of Appeals for the Armed Forces

Argued November 9, 2004

Decided March 4, 2005

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, C.J., CRAWFORD, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain Richard A. Viczorek, USMC (argued);
Lieutenant Travis J. Owens, JAGC, USNR (on brief).

For Appellee:  Lieutenant Craig Poulson, JAGC, USN (argued);
Lieutenant Colonel William K. Lietzau, USMC, and Lieutenant
Commander Monique A.S. Allen, JAGC, USNR (on brief); Colonel
M.E. Finnie, USMC, Commander Charles N. Purnell, JAGC, USN, and
Lieutenant Frank L. Gatto, JAGC, USNR.

Military Judge:  Charles R. Hunt

  **This opinion is subject to editorial correction before final publication**.

Judge ERDMANN delivered the opinion of the Court.

Lieutenant Commander (LCDR) Davis was tried at a general court-martial with members on charges resulting from the sexual abuse of his stepdaughter, whom he adopted, over a seven-year period. After mixed pleas, he was found guilty of rape of a child, rape, forcible sodomy upon a child, forcible sodomy, indecent liberties with a child, and indecent liberties, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, and 934 (2000), respectively. He was sentenced to confinement for life and forfeiture of $2,500.00 pay per month for 24 months. The convening authority approved the sentence, but suspended execution of the forfeitures on the condition that Davis maintain an allotment of all disposable pay and allowances to his wife. The Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence on December 30, 1997. United States v. Davis, 47 M.J. 707 (N-M. Ct. Crim. App. 1997).

In his initial appeal to this court, Davis claimed that he received ineffective assistance of counsel regarding the sentencing strategy employed at his trial. We found that the competing affidavits submitted on the issue of ineffective assistance of counsel warranted a fact-finding hearing to determine the nature of the legal advice provided to Davis. United States v. Davis, 52 M.J. 201, 206-07 (C.A.A.F. 1999). We

2

returned the record to the Judge Advocate General of the Navy for a hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

A DuBay hearing was held in January 2000 where the military judge received evidence and made findings of fact. The Court of Criminal Appeals adopted the findings of the military judge, rejected Davis's claims of ineffective representation, and again affirmed the findings and sentence. United States v. Davis, NMCM 9600585 (N-M. Ct. Crim. App. July 24, 2003).

The Sixth Amendment guarantees that a servicemember tried by court-martial will receive competent, effective legal representation. Davis's sentencing strategy was designed to avoid a punitive discharge in return for a longer period of confinement for the express purpose of protecting retirement benefits for his family. Because Navy regulations and policy at the time would not have allowed Davis to retire after his conviction, we granted review to determine whether Davis had received competent, effective legal advice during sentencing.

BACKGROUND

Lieutenant Commander Davis was a Naval Flight Officer assigned to the USS ENTERPRISE (CVN 65). At the time of trial he was forty-two years old and had completed almost seventeen years of military service. Because he had been passed over for promotion to commander twice, Davis was eligible to apply for voluntary retirement under the discretionary Temporary Early

3

Retirement Authority (TERA).[1]  Prior to the commencement of proceedings in this case, Davis had applied for retirement under TERA rather than face involuntary separation from the Navy.  He was approved for a TERA retirement with an effective date of December 1, 1994.  Prior to this retirement date, Davis's misconduct was discovered and the processing of his TERA retirement was terminated.[2]

During sentencing, Davis made a brief unsworn statement.  He informed the members that he had been passed over twice and that he was eligible to retire under TERA.  Under questioning from his attorney, Davis indicated that he desired more confinement to offset forfeitures and a dismissal so that he could "save" his retirement and provide for his family.  The Government argued for a sentence that included forty years of confinement and a dismissal from the Navy.  Defense counsel presented the defense sentencing strategy as follows:

> He told you send him to prison, send him for as long
> as you feel that it's necessary, but protect his
> family because he didn't.  The bottom line, that's
> what happened, he didn't protect them, but you have an
> opportunity to do what he didn't.  And punish him and
> send him to prison for as long as you think is
> necessary, add extra years if you -- to give the
> family money, if you think that you need to balance

---

[1] The Temporary Early Retirement Authority (TERA) was enacted in § 4403 of Pub. L. No. 102-484, 106 Stat. 2702 (1992).  To implement the program, the Navy promulgated NAVADMIN 093/95, Temporary Early Retirement Program for Officers.

[2] Paragraph 7, Subsection B, of NAVADMIN 093/95 provided: "An officer who is under adverse disciplinary . . . action under the [UCMJ] . . . may not apply for early retirement until the action is resolved in favor of the member."  (Emphasis added.)

4

that, but he asks you to do that, and that's what we're asking today. Show some mercy for that family. You don't have to show mercy for him, put him in jail, show mercy for the family because they need it right now and you're the only ones that can give him -- give them that.

You have an actuarial table that I have given to you as Defense Exhibit B, and that shows you the value of retirement, and I think that's probably the worst thing in his case is he actually was retirement-eligible. His family would have been taken care of financially and medically, but they're not, but he's still eligible for that. . . . Please consider not dismissing Lieutenant Commander Davis from the Navy. Arrangements can be made for his retirement to go to the family. He won't get a dime, he's going to be in prison. What's he going to do with money? They will get medical benefits, they will get money, if he survives they can try to rebuild their lives, and we ask you to consider that and consider that family.

At the request of the defense, a sentencing instruction was given informing the members that "[a] dismissal deprives one of all retirement benefits[.]" As noted, Davis was sentenced to confinement for life and forfeiture of $2,500 pay per month for twenty-four months, but no dismissal.

In a post-trial request for clemency, Davis's defense counsel asked the convening authority to suspend the adjudged forfeitures so that Davis's family would have the means to subsist. This clemency request stated, in part:

A less immediate, but no less important reason to suspend the forfeiture of pay is that the feasibility of LCDR Davis receiving retirement pay is nonexistent. The members did not award a dismissal in this case to ensure that the family had access to financial and medical resources that they are desperately in need of. I researched the issue as to whether or not LCDR Davis would be allowed to retire and was dismayed to

5

find that the system was not going to allow retirement despite the court-martial members['] wishes.

His defense counsel further explained that she had been informed that Davis would be required to show cause why he should not be eliminated from the Navy. She explained that even if Davis were recommended for retention after the show cause board, he would not be allowed to retire voluntarily under TERA. Eligibility for TERA retirement required that an adverse action be "resolved in favor of the member." Even though Davis was not dismissed at his court-martial, "the fact that LCDR Davis was in jail [the disciplinary action against him] was considered to not be resolved in his favor[.]" The convening authority approved the sentence but suspended the adjudged forfeitures contingent upon Davis providing "all disposable pay and allowances" to his family.

A show cause proceeding was initiated almost a year later to determine whether Davis should be separated from the Navy. The board recommended that Davis be separated from the Navy with an "other than honorable" discharge. The recommendation was accepted and in April 1997 Davis was discharged with a separation code denoting "misconduct, commission of a serious offense."

At the DuBay hearing held in January 2000, Davis and his two military defense counsel testified about the advice Davis had been given regarding his eligibility for retirement as it

6

related to the defense sentencing strategy.  The military judge's findings of fact reflect that defense counsel informed Davis that while obtaining a TERA retirement would be difficult, it would be possible:

> e. . . . Both counsel advised him that, even if he was not dismissed as a result of the court-martial, he would unquestionably have to go through the administrative discharge process.  Counsel believed that, armed with a member's [sic] sentence of no dismissal, they could credibly argue for a favorable result at a [Board of Inquiry].  A favorable result would be not to receive an other than honorable discharge.  Such a result would raise the issue of TERA eligibility. . . .  At that point, the worst case for LCDR Davis, that is if BUPERS [Bureau of Naval Personnel] found LCDR Davis ineligible for TERA, would still entitle him to severance pay and the limited attendant military benefits.  All of these consequences were communicated to LCDR Davis.
>
> . . . .
>
> i.  After the member's [sic] clear rejection of LCDR Davis's credibility and his resulting conviction, the defense counsel believed that arguing for more confinement in lieu of a dismissal was their only effective extenuation and mitigation strategy. . . . A sentence to no dismissal would preserve the possibility of maintaining an income stream for the family, as well as medical benefits. . . .
>
> j.  Defense counsel effected this strategy through LCDR Davis's unsworn statement, LCDR Tinker's sentencing argument, and the defense's tailored sentencing instruction on the effect of a dismissal. Because of their awareness of the limitations of bringing up collateral consequences of a conviction during pre-sentencing, defense counsel presented their strategy to the members in an unequivocal manner:  he was retirement eligible under TERA, his family needed his retirement benefits, do not sentence him to a dismissal.  As a result, the reality, which included the uncertainties of the administrative discharge process and the eligibility for TERA, was not brought to the attention of the members.

Despite framing a sentencing strategy centered on the possibility of TERA retirement, it was not until about a month after trial that defense counsel learned telephonically that the Bureau of Navy Personnel (BUPERS) "did not intend to allow LCDR Davis to retire under TERA." Specifically, defense counsel was informed during that phone conversation that no TERA retirement would be considered unless pending disciplinary action was "resolved in favor of the member" by acquittal.

DISCUSSION

Ineffective Assistance of Counsel

The Sixth Amendment right to effective assistance of counsel at trials by court-martial is a fundamental right of servicemembers. United States v. Knight, 53 M.J. 340, 342 (C.A.A.F. 2000)(citing United States v. Palenius, 2 M.J. 86 (C.M.A. 1977)). In reviewing claims that counsel rendered ineffective representation we apply the two-pronged test for ineffective assistance of counsel set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The burden on each prong rests with the appellant challenging his counsel's performance.

First, an appellant must show that counsel's performance fell below an objective standard of reasonableness -- that counsel was not functioning as counsel within the meaning of the Sixth Amendment. United States v. Terlep, 57 M.J. 344, 349

8

(C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate professional service. United States v. Garcia, 59 M.J. 447 (C.A.A.F. 2004). Thus, an appellant's burden is especially heavy on this deficiency prong of the Strickland test. United States v. Adams, 59 M.J. 367 (C.A.A.F. 2004). An appellant must establish a factual foundation for a claim of ineffectiveness; second-guessing, sweeping generalizations, and hindsight will not suffice. See United States v. Key, 57 M.J. 246, 249 (C.A.A.F. 2002); United States v. Alves, 53 M.J. 286, 289 (C.A.A.F. 2000); United States v. Gray, 51 M.J. 1, 19 (C.A.A.F. 1999). The presumption of competence is rebutted by a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms. United States v. McConnell, 55 M.J. 479, 482 (C.A.A.F. 2001).

The second prong of an appellant's burden requires a showing of prejudice flowing from counsel's deficient performance. The appellant must demonstrate such prejudice as to indicate a denial of a fair trial or a trial whose result is unreliable. United States v. Dewrell, 55 M.J. 131, 133 (C.A.A.F. 2001). The appropriate test for prejudice under Strickland is whether there is a reasonable probability that, but for counsel's error, there would have been a different

9

result.  United States v. Quick, 59 M.J. 383, 387 (C.A.A.F. 2004).

Ineffective assistance of counsel involves a mixed question of law and fact.  United States v. Anderson, 55 M.J. 198, 201 (C.A.A.F. 2001).  Factual findings are reviewed under a clearly erroneous standard.  But the ultimate determinations of whether an appellant received ineffective assistance of counsel and whether the error was prejudicial are reviewed de novo.  Id.; United States v. Cain, 59 M.J. 285, 294 (C.A.A.F. 2004); United States v. McClain, 50 M.J. 483, 487 (C.A.A.F. 1999).

The Sentencing Strategy

The entire defense sentencing strategy was to preserve an opportunity for Davis to retire under TERA and thereby provide support and benefits for his family. The Government argues that retirement eligibility under TERA is a collateral matter not subject to the Strickland analysis for ineffective assistance of counsel.  We disagree.  While retirement eligibility may well be a collateral matter in a different case, it is not so here.  The potential for a TERA retirement and defense counsel's advice in that regard formed the theme and foundation for the defense sentencing strategy.  Davis relied on this advice when he asked for increased confinement in lieu of a dismissal from the Navy. Under these particular facts, we reject any suggestion that the

cornerstone of the defense sentencing strategy was merely a collateral matter.

While Davis's counsel advised him that it would be an uphill struggle to achieve a TERA retirement, they held out the hope that if he did not receive a dismissal, retirement under TERA, while uncertain, was a possibility. Although a critical component of the defense sentencing philosophy was based on this possibility, Davis's defense counsel failed to determine the meaning and effect of the eligibility language in TERA that an officer charged with a UCMJ offense may not "apply for early retirement until the action is resolved in favor of the member." Prior to trial, defense counsel did not thoroughly research this critical point of eligibility or even call BUPERS to determine whether Davis would be eligible to seek TERA retirement. In fact, BUPERS policy was that an individual with a felony conviction was disqualified from a TERA retirement.[3]

Turning to the question of whether Davis has met his burden under the first prong of Strickland, we have created a three-part test for determining whether the presumption of competence has been overcome:

---

[3] The government argued that Davis could have been eligible for a TERA retirement through a waiver from the Secretary of the Navy and therefore the defense strategy was sound. This merely underscores the fact that under the eligibility criteria at the time, Davis was not eligible for a TERA retirement. We need not speculate whether the Secretary of the Navy would have waived the eligibility criteria under these circumstances.

1. We ask first whether the Appellant's allegations are true and, if so, whether there is a reasonable explanation for counsel's actions.

2. Next, if the allegations are true, we review whether defense counsel's level of advocacy fell measurably below the performance standards ordinarily expected of fallible lawyers.

3. Finally, if we find that defense counsel was ineffective, we test for prejudice and determine whether there is a reasonable probability that, absent the error, there would have been a different result.

United States v. Garcia, 59 M.J. 447, 450 (C.A.A.F. 2004); United States v. Grigoruk, 52 M.J. 312, 315 (C.A.A.F. 2000).

In determining whether Davis's allegations are true, we are mindful that we will not reject findings of fact unless they are unsupported in the record. In light of the record, we agree with the determination of the Court of Criminal Appeals that Davis was not credible when he asserted "that he believed, based on the advice from his lawyers, that his TERA retirement benefits would automatically result if the court-martial did not adjudge a dismissal."

Nonetheless, a critical portion of Davis's allegations is confirmed in this record. The military judge found that both defense counsel believed that Davis understood their advice that there was a chance, although remote, that he could retain

12

retirement benefits.  Davis understood this advice and approved the strategy.  Even though counsel advised Davis that it would be a difficult path to retirement, that advice obviously held out the hope that retirement was possible.  Therefore, that portion of Davis's allegations is true -- he was led to believe there was a chance that somewhere down the road, after his conviction, he could be retired under TERA.  A single phone call, made by defense counsel a month after trial, revealed the fallacy of this belief and counsel's subsequent advice.

We find no reasonable strategic or tactical reason for the flawed advice.  The flaw is a direct result of not investigating the meaning and effect of eligibility language in the TERA regulation as it applied to a member facing adverse action. Davis pleaded guilty to very serious offenses.  Regardless of the outcome on the contested offenses, he would stand convicted of felony offenses based on his pleas alone.  It strains reason to conclude that such a result -- a general court-martial conviction involving child sexual-abuse offenses that resulted in confinement for life -- might somehow be considered a resolution "favorable" to the member.

Assuming that the application and administration of TERA in the Navy is as confusing as the Government claims, that fact itself provides greater incentive for counsel to investigate and research the area thoroughly before formulating an entire sentencing strategy and advising a client to pursue that course.

Yet counsel did not know that under the Navy rules and policy at the time, TERA was not an option in this case. Consequently, they could not and did not correctly advise Davis. Counsels' sentencing strategy was fundamentally flawed from its inception because of a failure to research the critical law and regulations. Davis was misadvised and there is no reasonable explanation for counsels' failure to conduct proper research.

We next must determine whether counsels' performance fell below that ordinarily expected of fallible lawyers. We find that it did. Familiarity with the facts and applicable law are fundamental responsibilities of defense counsel. See Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). A reasonable attorney acting on behalf of a client would have researched the meaning and effect of TERA's conditional language prior to embarking on a trial or sentencing strategy. The failure to investigate this critical component of the defense sentencing strategy precluded counsel from exercising informed judgment and fully informing Davis of the possible consequences of the strategy. Advising Davis and formulating a sentencing strategy based upon what

14

counsel considered confusing eligibility criteria for TERA was risky; not determining the actual meaning of those eligibility criteria was unreasonable. We find that counsels' performance was ineffective.

We must next test for prejudice and determine whether there is a reasonable probability that, absent the error, there would have been a different result. Had Davis and his counsel known that there was no possibility of a TERA retirement except for a Secretarial waiver, there would have been little incentive for Davis to ask for increased confinement to offset a possible punitive dismissal. Following counsel's argument that the members should maximize Davis's period of confinement to preserve the possibility of his retirement, the members did just that. They adjudged the maximum period of confinement available. If that possibility had not been presented to the members, with the Government arguing for a sentence of forty years of confinement and a dismissal, there is a reasonable probability that there would have been a different result. Davis was therefore prejudiced by the faulty advice and strategy of his trial defense counsel.

## DECISION

The decision of the Navy-Marine Corps Court of Criminal Appeals is affirmed as to the findings, but is reversed as to the sentence. The sentence is set aside. The record is

15

returned to the Judge Advocate General of the Navy.  A rehearing on the sentence is authorized.