# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, B.T. PALMER, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ALEXANDER LOPUCHIN**
**AEROGRAPHER'S MATE THIRD CLASS (E-4), U.S. NAVY**

**NMCCA 201400270**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 20 March 2014.
**Military Judge:** CAPT R.B. Blazewick, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southeast, Jacksonville, FL.
**Staff Judge Advocate's Recommendation:** LCDR N.O. Evans, JAGC, USN.
**For Appellant:** Frank Spinner, Esq.; Maj Benjamin Robles, USMC; LT Jessica Ford, JAGC, USN.
**For Appellee:** Maj Tracy Holtshirley, USMC; Capt Cory Carver, USMC.

**24 September 2015**

---------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial composed of members with enlisted representation convicted the appellant, contrary to his pleas,

of sexual assault[1] in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920.  The members sentenced the appellant to sixty days' confinement, reduction to pay grade E-1, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant raises two assignments of error (AOE):  (1) his conviction is legally and factually insufficient; and (2) his trial defense counsel were ineffective when they failed to call a potentially exculpatory witness.

After carefully considering the record of trial and the parties' submissions we are convinced that the findings and sentence are correct in law and fact and that no error materially prejudicial to substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

## Background

Airman First Class (A1C) HW, USAF, and the appellant first met in late January 2013 at the Air Force Base where they were both undergoing training.  The following night, a Saturday, A1C HW and several fellow trainees, both male and female, rented a room at a local hotel where they drank alcohol and socialized.  The appellant also attended that gathering as an invited guest.  At approximately 2230 that evening, A1C HW and two male classmates, A1C DM and A1C MM, went to a different hotel which had a casino and nightclub.  They invited others in the room to join them and only the appellant decided to go along.

A1C HW testified that before leaving for the casino/nightclub she drank approximately 5-6 mixed drinks containing vodka, a double shot of rum, and 3-4 beers.[2]  A1C HW also testified that she felt like she was starting to get drunk at that point.[3]  Witnesses described A1C HW as being tipsy and having a flushed face, slurred speech, talking and laughing loudly, and stumbling once before leaving.[4]  But all the

---

[1] The appellant was charged with a single specification of sexual assault for penetrating [the victim's] vulva with his penis when she was incapable of consenting due to alcohol impairment.

[2] Record at 372.

[3] *Id.* at 369.

[4] *Id.* at 601, 795, 922.

2

witnesses agreed that she was not too intoxicated to go to the casino/nightclub.

When the group arrived at the casino/nightclub, A1C HW and the appellant went inside while A1C DM and A1C MM smoked cigarettes outside. A1C HW testified that she and the appellant continued to drink alcohol and danced for one song. On cross-examination A1C HW admitted the dancing included "grinding" and her "butt" pushing into the appellant's "crotch."[5] A1C HW also testified that she soon stopped dancing because she was having trouble supporting herself and felt like her brain was getting fuzzy.[6] She and the appellant then looked for A1C DM and A1C MM and after being unable to locate them, returned to the club where A1C HW ordered and drank a "trash can," a mixed drink containing multiple types of alcohol.[7]

Near the end of the evening, A1C HW and the appellant reconnected with A1C DM and A1C MM in the casino lobby. A1C DM and A1C MM both testified that by then A1C HW was clearly drunk, slurring her words, and having a hard time standing. They also testified that the appellant was holding A1C HW upright and the appellant did not appear intoxicated.[8] A1C DM and A1C MM told A1C HW and the appellant to briefly wait in place while A1C DM used the bathroom and A1C MM cashed out his casino chips. When they returned a few minutes later A1C HW and the appellant were gone. A1C DM and A1C MM unsuccessfully attempted to find A1C HW and the appellant over the next 1-2 hours, included searching the casino/nightclub and calling A1C HW and the appellant. But all of the calls went directly to voicemail.[9] Instead of waiting for A1C DM and A1C MM, the appellant and A1C HW returned to the original hotel and the appellant rented a room.[10]

A1C HW testified that the next morning she awoke completely naked and in bed with the appellant, who was also naked.[11] She stated that she collected her clothes from around the room and

---

[5] *Id.* at 470-71.

[6] *Id.* at 379.

[7] *Id.* at 383.

[8] *Id.* at 799-800, 801, 870, 927-29, 931, 995.

[9] *Id.* at 932-34.

[10] Prosecution Exhibits 1 and 2.

[11] *Id.* at 388-390.

3

went to the bathroom where she observed a hickey on her neck and felt soreness in her vagina.[12] A1C HW also testified that her last memory from the prior night was being slumped in a chair in the original hotel lobby and the appellant then helping her into an elevator.[13] She recalled feeling extremely intoxicated and tired at that time and wanting to go to sleep. While in the bathroom A1C HW dressed and she and the appellant then returned to the original party room. Once there a group including A1C DM, A1C MM, A1C HM, and the appellant, among others, went to breakfast. A1C HM testified that while at breakfast, the appellant pulled her aside and told her that they had protected sex the previous night and then he asked [her] not to call the SARC (Sexual Assault Response Coordinator).[14] The next day, A1C HW spoke to the SARC, gave a statement to a criminal investigator, and underwent a sexual assault forensic examination.

## Legal and Factual Sufficiency

The appellant asserts that his sexual assault conviction is legally and factually insufficient. We review issues of factual and legal sufficiency de novo. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether, viewing the evidence in the light most favorable to the prosecution, "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Brown*, 55 M.J. 375, 385 (C.A.A.F. 2001) (quoting *Jackson v. Virginia*, 443 U.S 307, 319 (1979)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of

---

[12] *Id.* at 389.

[13] *Id.* at 386-87.

[14] *Id.* at 395, 523.

4

each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

AC1 HW testified that she had no memory of the sexual assault, but maintained that she would never willingly have sex with the appellant. During cross-examination she conceded, based on having no memory of what occurred in the hotel room before she awoke, it was possible she consented to sexual activity with the appellant.[15] The appellant contends that AC1 HW's concession in this regard amounts to reasonable doubt and therefore the Government failed to prove the offense.[16] We disagree.

The Government presented substantial evidence of AC1 HW's intoxicated state. She drank alcohol consistently from dinner, at 1800, up to a point close to when she left the casino/nightclub with the appellant approximately six hours later. The Government's toxicology expert reasonably estimated that she had a blood alcohol content somewhere "between a mid-.2 and up to a .30" by the end of the night.[17] The expert also testified that at such a level an individual would display "staggering gate, impaired balance, slurred speech, . . . slowed reaction times, impaired thought processes, [and] impaired perceptions . . . ."[18] The expert's description is consistent with AC1 DM and AC1 MM's observations of AC1 HW when they reconnected with her and the appellant in the casino. AC1 DM and AC1 MM also both testified that the appellant was physically assisting AC1 HW to stand at that time and that he did not appear to be intoxicated. Thus, it is reasonable to infer that by the evening's end, the appellant was fully aware of the significant amount of alcohol AC1 HW consumed and her highly intoxicated state. But even after AC1 DM and AC1 MM told them to wait in place, the appellant left with AC1 HW and booked a separate room in the same hotel where the appellant knew her to be staying with friends. The appellant also did not answer his phone when AC1 DM attempted to call him, and then confessed to AC1 HW that they had sex and asked her not to report it to the SARC, demonstrating his consciousness of guilt.

---

[15] *Id.* at 479, 553.

[16] Appellant's Brief of 18 Dec 2014 at 7.

[17] Record at 686.

[18] *Id.*

"A sleeping, unconscious, or incompetent person cannot consent." MCM, Part IV, ¶ 45(g)(8)(B). AC1 HW's excessive alcohol consumption coupled with her inability to support herself and stand at the end of the night is strong evidence that she was sufficiently incapacitated by intoxication to lack the cognitive ability to appreciate the nature of the conduct in question and communicate a decision regarding that conduct to the appellant. We find compelling evidence that the appellant was aware of AC1 HW's intoxicated state and intentionally acted to take advantage of her incapacitated condition.

We have reviewed the record of trial, paying particular attention to the evidence and reasonable inferences that can be drawn therefrom. In viewing the evidence in the light most favorable to the Government, we conclude a rational factfinder could have found beyond a reasonable doubt that the appellant committed the offense. Having reviewed the entire record and making allowances for not personally observing the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt.

### Ineffective Assistance of Counsel

The appellant also alleges that his trial defense counsel performed ineffectively by failing to call Lance Corporal (LCpl) AC as a defense witness on the merits. LCpl AC filed a post-trial affidavit stating: (1) he is a friend of the appellant; (2) he was interviewed by the appellant's trial defense counsel; (3) he was present and available to testify at trial; (4) if called as a witness he would have testified that he observed and used his cellular phone to photograph pictures of a hickey on the appellant's neck and scratches on the appellant's back shortly after the alleged sexual assault; (5) for an unknown reason he was unable to preserve the photos on his phone and no longer possessed the phone at the time of trial; (6) nevertheless he could still have testified to his observations; and (7) he was never called as a witness in the appellant's court-martial.[19]

We review "questions of deficient performance and prejudice de novo." *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citations omitted). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was

---

[19] Appellant's Motion to Attach of 6 May 2015, LCpl AC affidavit of 16 Dec 2014.

6

deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citations omitted).

Generally counsel are presumed to be competent. *United States v. Cronic*, 466 U.S. 648, 658 (1984). This presumption is rebutted only when there exists a showing of specific errors made by defense counsel that are unreasonable under prevailing professional standards. *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005); *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984) (finding that the Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms").

We find that the appellant has not met his burden of demonstrating his trial defense counsel were ineffective. The appellant's contention that the proposed witness' testimony would support the inference of AC1 HW's consent to the sexual act is tenuous. The photographs purportedly documenting marks on the appellant were no longer available at the time of trial. And, even if LCpl AC would have testified that he saw marks on the appellant, he viewed them days later and could not confirm their source. Given the inconclusive nature of the potential testimony, trial defense counsel were well within their discretion to not call the witness. The appellant has neither offered other evidence of defense counsels' deficiency, nor shown this choice was unreasonable.

Even assuming deficient counsel performance, we do not find the alleged inaction to be prejudicial to the appellant or the overall outcome of the trial. Prejudice requires that "[t]he defendant . . . show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* We are convinced of the legal and factual sufficiency of the case, and do not find that the LCpl AC's proposed testimony undermines that conclusion or that the case would have been decided differently at trial.

**Conclusion**

The findings of guilty and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court