# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

———————————

### No. 201600294

———————————

### UNITED STATES OF AMERICA
Appellee

v.

### ANDREW J. MULLER
Sergeant (E-5), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges: Lieutenant Colonel Elizabeth Harvey, USMC
(Motions); Colonel James K. Carberry, USMC (Merits).
Convening Authority: Commanding General, 1st Marine Division
(Rein), Camp Pendleton, CA.
Staff Judge Advocate's Recommendation: Captain Joseph A.
Atkinson, USMC; Addendum: Major Matthew J. Stewart, USMC.
For Appellant: Captain Andrew R. House, JAGC, USN.
For Appellee: Major Kelli A. O'Neil, USMC; Lieutenant Commander
Jeremy R. Brooks, JAGC, USN.

———————————

Decided 27 July 2017

———————————

Before MARKS, RUGH, and JONES, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited
as persuasive authority under NMCCA Rule of Practice and
Procedure 18.2.**

———————————

JONES, Judge:

At a general court-martial, members with enlisted representation
convicted the appellant, contrary to his pleas, of aggravated assault, assault
consummated by a battery, and drunk and disorderly conduct, in violation of
Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§

928 and 934. The convening authority (CA) approved the adjudged sentence of six months' confinement, reduction to pay grade E-1, and a bad-conduct discharge.

The appellant raises two assignments of error: (1) the military judge erred in denying the defense's expert testimony that would have mitigated government claims regarding the seriousness of the victim's injuries; and (2) the trial defense counsel was ineffective by failing to identify and present evidence that the appellant was suffering from post-traumatic stress disorder (PTSD) when he assaulted the victim. We disagree and, finding no error materially prejudicial to the substantial rights of the appellant, affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant was a member of 1st Reconnaissance Battalion. On 12 May 2015, a group of Marines invited RC, a 61-year-old Navy retiree, and his wife to a barbeque at Hale Koa Beach, on Marine Corps Base Kaneohe Bay, Hawaii. RC's son had served in the Marine Corps' 4th Reconnaissance Battalion, and RC attended the barbeque wearing a Reconnaissance Battalion sweatshirt. The appellant confronted RC about why he was wearing the sweatshirt and was not satisfied with RC's explanations. The appellant called his Master Sergeant (MSgt) twice, asking him to "vet" RC's story, but the MSgt refused, telling the appellant to "let it go" and "don't worry about it."[1]

The appellant continued to query RC about the propriety of wearing the sweatshirt. Some minutes later, RC and the appellant moved away from the group where they continued their discussion. According to RC, when he began walking away from the appellant, the appellant pushed him down from behind and into a tree. RC next remembers the appellant straddling him and punching him in the face until he lost consciousness. The appellant was pulled off of RC by bystanders. RC suffered bleeding in the brain and multiple facial fractures.

## II. DISCUSSION

### A. Denial of expert testimony

The appellant argues the military judge erred in denying the defense's expert testimony that would have mitigated government claims regarding the seriousness of RC's injuries. We disagree.

We review a military judge's decision to deny a request for expert testimony for an abuse of discretion and will overturn it only "if the findings

---

[1] Record at 401.

of fact are clearly erroneous or the decision is influenced by an erroneous view of the law." *United States v. Anderson*, 68 M.J. 378, 383 (C.A.A.F. 2010) (citations omitted). "'[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.'" *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (quoting *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004)).

RULE FOR COURTS-MARTIAL (R.C.M.) 703(b)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) entitles an accused to "the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be relevant and necessary." MILITARY RULE OF EVIDENCE 706, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) extends that entitlement to expert witnesses and requires that "[t]he trial counsel, the defense counsel, and the court-martial have equal opportunity to obtain expert witnesses under Article 46[, UCMJ,] and R.C.M. 703."[2]

*1. The pretrial motion for production of Dr. B as an expert witness*

Prior to trial, the defense made a motion for expert *assistance* from Dr. B, a neurologist. The defense was concerned that RC's medical record did not support his assertions of the extent of his injuries—claims of nerve damage and possible bleeding. The military judge granted Dr. B as an expert consultant to help the defense interpret the medical records and to "understand the potential harm that [RC] has reportedly received."[3]

In a subsequent motion, the defense requested Dr. B be produced as an expert *witness* at trial. They argued the government was calling two doctors—Dr. G, an expert in emergency room care, and Major R, an expert in general surgery and trauma critical care—whose testimony would conflict, and they needed Dr. B to "aid in cross-examination" of the government's two treating doctors' "competing narrative[s]."[4] The defense conceded that Dr. G's opinion about the injuries would assist their case, while Major R's opinion aligned more with the government's version of events. But the defense argued they may "potentially have to call [Dr. B] ultimately as a witness, depending on the responses."[5] The trial counsel averred there were no inconsistencies,

---

[2] Article 46(a), UCMJ, establishes the equal opportunity to obtain witnesses and other evidence: "The counsel for the Government, the counsel for the accused, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."

[3] Record at 56.

[4] *Id.* at 126.

[5] *Id.*

and pointed out that the defense could not—and would not—explain what those potential inconsistencies were and how Dr. B would possibly clear them up. The military judge pressed the defense on whether they wished to offer any evidence at the motion hearing as to what the alleged inconsistencies were. She even asked the defense if they wished to call either or both of the doctors to prove their motion, but the defense declined.

In a written opinion, the military judge discussed the applicability of R.C.M. 703(b), and Article 46, UCMJ. Additionally, the military judge cited some of the factors to be considered when determining whether a party is entitled to the production of a witness, as outlined in *United States v. Ruth*, 46 M.J. 1, 8 (C.A.A.F. 1997): the importance of the requested witness to the issues involved in the case, whether the witness is desired on the merits or sentencing, and whether the witness's testimony would be cumulative.

Denying the motion, the military judge concluded,

> The [d]efense has not established that the presence of Dr. [B] at trial is necessary. The [d]efense has spoken to Dr. [G], the physician at the civilian hospital where [RC] was initially seen for a period of hours, and [Major R] the physician at Tripler Medical Center where [RC] was transferred and treated over a span of days. The [d]efense believes the testimony of these two witnesses will conflict. However, the [d]efense has provided no evidence of that conflict. Further, the [d]efense has already interviewed the witnesses, they know what the witnesses will say, and can prepare for cross-examination within the time previously granted.

> As for production to testify as an expert witness, the defense has not shown that Dr. [B]'s production is necessary in that regard either. No evidence of what Dr. [B] might testify to was presented. The [d]efense has failed to meet its burden to show that Dr. [B] would provide relevant or reliable testimony.[6]

We agree with the military judge's conclusions. In failing to respond to the military judge's invitation to put on evidence showing that there was some inconsistency between the two government witnesses that would necessitate Dr. B's presence at trial, the defense failed to carry their burden on the motion. Either there was no inconsistency that necessitated the production of Dr. B, or the defense decided to hold their cards close to their chest, not revealing their trial strategy at the motion hearing. Regardless, the appellant is entitled to no relief. The military judge's findings of fact were

---

[6] Appellate Exhibit LXII at 3.

not clearly erroneous, and her conclusions that the defense had not demonstrated the necessity of their requested expert witness betray no abuse of discretion.

*2. The mid-trial renewal of the motion for production of Dr. B as an expert witness*

At trial, Dr. G, the first treating physician, testified regarding the extent of RC's injuries, twice acknowledging that the injuries were "serious."[7] The defense objected only the second time—on re-direct examination—to the witness quantifying the injuries, and the objection was sustained. The military judge also gave a curative instruction to the members, that "the determination as to whether or not this is an injury of a serious nature or an injury that constitutes a grievous bodily harm is solely within your province."[8] The defense affirmed they were satisfied with the curative instruction.

After Dr. G's but before Major R's testimony, the defense renewed its request that Dr. B be produced as an expert witness. Based on previous discussions with Major R, they were concerned that he, like Dr. G, was not sufficiently qualified—neither government witness was a neurologist—to testify regarding how "significant" the brain bleeds were.[9] They argued that if government witnesses were going to testify as to the severity of the brain bleeds, then they wanted to call Dr. B, who would characterize the bleeds as "very minor."[10] The military judge ordered the trial counsel to instruct Major R to steer clear of testifying regarding the severity of the brain bleeds. The government assured the military judge that Major R was not going to testify as to the severity of the injuries. Nevertheless, the military judge put the court in recess so the trial counsel could confirm Major R understood the limits of his testimony. After that, and prior to the members returning to the courtroom, the military judge queried Major R to make certain he would only "chronicle the injuries" he discovered vice quantifying them.[11] Finally, the military judge asked the civilian defense counsel if the measures taken were satisfactory, and the counsel responded that they were.

The seriousness of the brain bleed was an important issue for the defense in seeking to avoid a conviction for aggravated assault. Yet, for tactical

---

[7] Record at 226, 243. She mentioned the word once on direct examination and once on re-direct examination.

[8] *Id.* at 243.

[9] *Id.* at 247.

[10] *Id.* at 246.

[11] *Id.* at 248.

reasons they elected not to put on the necessary evidence at the motion hearing to secure the production of Dr. B at trial.[12] We decline to second-guess the tactical decisions made by civilian defense counsel. More importantly, during the trial the military judge prohibited the two government experts from quantifying the seriousness of the injuries to RC, thus obviating the need for Dr. B to testify on that matter.

Additionally, the military judge ensured the members understood that they—and not any witness—determined whether RC's injuries were serious. In the final instructions, the military judge defined grievous bodily harm as "serious bodily injury . . . [such as] fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs, or other serious bodily injury."[13] The members used this definition to find that RC suffered grievous bodily harm—a subdural hematoma, subarachnoid hemorrhaging, and multiple facial fractures—at the hands of the appellant. Absent evidence to the contrary, members are assumed to have followed all of the military judge's instructions, including the curative instruction given during Dr. G's testimony. *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991).

We find no abuse of discretion in the pretrial and mid-trial denials of the defense's request for Dr. B as an expert witness.[14]

## B. Ineffective assistance of counsel

The appellant alleges his trial defense counsel were ineffective by failing to identify and present evidence that he was suffering from PTSD when he assaulted the victim. We disagree.

On 27 July 2016—three and one-half months after the trial ended—a Psychiatric Nurse Practitioner at the brig diagnosed the appellant with PTSD. She acknowledged that the appellant had been seen as early as 2009 for mental health treatments and had never been diagnosed with PTSD by any other mental health provider. Nevertheless, she concluded "it appears that some of [the appellant's PTSD] symptoms were contributing factors to his conduct on 12 May 2015."[15]

On 16 October 2016, the appellant signed a declaration stating he was evaluated and diagnosed with PTSD "after suffering insomnia, anxious

---

[12] Although, during the motions session they were assured that the government would not put on evidence of the seriousness of the brain bleed.

[13] Record at 523.

[14] The defense offered an affidavit by Dr. B in sentencing which described the brain bleed as minor.

[15] Clemency Request of 29 Jul 2016, Enclosure 3 at 1.

spells, and panic attacks in the [b]rig."[16] In discussing whether he mentioned any PTSD issues with his trial defense counsel, he avers:

> In preparing for my trial, I did discuss my service and combat experience with my defense counsels and I believe I mentioned possible PTSD in an early meeting with my military defense counsel, Capt [J]. They did not suggest that I be evaluated for PTSD and I did not think to seek an evaluation myself.[17]

"The Supreme Court has set a high bar for an appellant to prevail" on a claim of ineffective assistance of counsel. *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015). *Strickland v. Washington*, 466 U.S. 668 (1984), requires the appellant to show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the counsel's deficient performance gives rise to a "reasonable probability" that the result of the proceeding would have been different without counsel's unprofessional errors. *Akbar* 74 M.J. at 371 (quoting *Strickland*, 466 U.S. at 688, 694). The appellant must show that his counsel's performance was so deficient that they were not functioning as the counsel guaranteed by the Sixth Amendment. *Denedo v. United States*, 66 M.J. 114, 127 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904 (2009).

The appellant fails the first *Strickland* factor because his defense counsel team's performance in defending him did not fall below an objective standard of reasonableness. We give little weight to the appellant's self-serving declaration that he *might* have discussed possible PTSD issues with his military counsel early on in the pretrial process. The appellant had no formal diagnosis of PTSD at the time of trial.

During the presentencing proceedings, the appellant called four witnesses and admitted 16 affidavits, all from people he served with throughout his career, including in combat environments. Every person attested to his good character and performance as a Marine. Notably, not one mentioned ever observing in the appellant any signs or symptoms of PTSD. In fact, they spoke of him as someone not exhibiting the typical signs of PTSD—such as being short-tempered and aggressive.[18] The appellant also gave an unsworn statement, which included chronicling his combat experiences as a

---

[16] Motion to Attach of 17 Nov 2016, Appendix A at 7.

[17] *Id.* at 6.

[18] The 16 affidavits describe the appellant as someone who: never lost his self-control, was never aggressive, was always calm under all circumstances, could deal with stressful situations, was cool and level headed, had a calm demeanor, and was very mild-tempered. Defense Exhibit J at 3, 11, 16, 23, 38, and 46.

Reconnaissance Marine and his numerous deployments. Again, there was no mention of any signs, symptoms, or diagnosis of PTSD.

We disagree with the appellant's assertion that "[g]iven the defense counsels' awareness of [his] combat experience and the facts of his assault of the victim, it was unreasonable and deficient to forego examination of [the appellant] for potential PTSD before his trial."[19] Merely because the appellant had combat experience and then committed an assault while he was drunk at a party, does not mean, *ipso facto*, that his defense counsel were deficient for failing to investigate the option of having him tested for PTSD.

The defense counsel also were not ineffective in failing to present evidence during the trial of the appellant's undiagnosed PTSD. There is no evidence that the defense counsel were aware of any particular symptoms of PTSD the appellant had—either on-duty or off-duty—and the appellant's numerous character witnesses spoke of the appellant as someone not having PTSD symptoms. Additionally, the post-hoc statement by the Nurse Practitioner that "it appears that some of [the appellant's PTSD] symptoms were contributing factors to his conduct on 12 May 2015," is of little significance.[20] Mere "second-guessing, sweeping generalizations, and hindsight will not suffice" for a claim by the appellant of ineffective assistance of counsel. *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citations omitted).

The trial defense counsel were not deficient in failing to find and present evidence of the appellant's possible PTSD, and their performance never fell below an objective standard of reasonableness. The appellant has failed to satisfy the first *Strickland* factor, rendering analysis of the second *Strickland* factor moot.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge MARKS and Judge RUGH concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[19] Appellant's Reply Brief of 28 Feb 2017 at 5.

[20] Clemency Request, Enclosure 3 at 1.