*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Austin E. RANKIN**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202300100**

_____

Decided: 12 July 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Adam M. King

Sentence adjudged 17 November 2022 by a general court-martial convened at Marine Corps Base Camp Foster, Okinawa, Japan, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for fifty months, forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant:
*Catherine M. Cherkasky*
*Lieutenant Commander Matthew A. Kozyra, JAGC, USN*

For Appellee:
*Lieutenant Rachel E. Noveroske, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of two specifications of possessing child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ).[1] In his sole assignment of error (AOE), Appellant asserts his trial defense counsel's breach of their duty of confidentiality rendered his guilty plea involuntary. We find no prejudicial error and affirm.

## I. BACKGROUND

In the spring of 2021, the Naval Criminal Investigative Service (NCIS) began investigating Appellant for possession of child pornography based upon two National Center for Missing and Exploited Children CyberTipline reports. On 20 August 2021, NCIS executed a Command Authorization for Search and Seizure of Appellant's barracks room. Among the items seized was a Lenovo Thinkpad, a search of which revealed thousands of media items later identified as child pornography. On 2 September 2021, a Search and Seizure Warrant for Appellant's Dropbox account was issued pursuant to 18 U.S.C. § 2703.[2] The ensuing search identified thousands of additional images of child pornography contained in a folder labeled "Gucci stuff."

On 13 July 2022, Appellant was charged with three specifications of possessing child pornography. The first specification stemmed from an image found on Appellant's Gmail account, the second concerned the content found on his Lenovo Thinkpad, and the third derived from the content found in his Dropbox account.

Appellant, through his trial defense counsel, subsequently negotiated a plea agreement with the convening authority wherein Appellant agreed to plead guilty to the second and third specifications of the Charge. In exchange

---

[1] 10 U.S.C. § 934.

[2] Dropbox is an online file hosting service.

for this, the convening authority agreed to conditionally withdraw and dismiss the remaining specification, to refrain from referring any additional related charges or specifications, and to limit the sentence the military judge could award based on Appellant's plea. Absent the agreement, the maximum punishment Appellant faced for the charged offenses was 30 years' confinement, reduction to E-1, a dishonorable discharge, total forfeitures, and a fine.[3] But the terms of the plea agreement imposed only a minimum of three years' and a maximum of five years' confinement for each specification to which Appellant pleaded guilty, to run concurrently.[4] The agreement also allowed for total forfeitures and required that Appellant be reduced to paygrade E-1 and receive a dishonorable discharge.[5]

Before being questioned regarding the specifics of his plea and plea agreement, Appellant was placed under oath. Prior to accepting Appellant's plea, the military judge informed Appellant that he was free to "withdraw from this plea agreement for any reason prior to [the military judge's] acceptance of [Appellant's] plea agreement."[6] The military judge then asked Appellant, "Do you understand your ability to withdraw from the plea agreement?"[7] Appellant responded, "Yes, sir."[8] The military judge additionally asked whether Appellant was "satisfied with [his] defense counsel's advice concerning [the] plea agreement."[9] Appellant again responded, "Yes, sir."[10] Appellant next indicated he entered the plea agreement of his own free will and was not forced by anyone to make the plea agreement.[11]

Later in the colloquy, the military judge asked Appellant, "Are you satisfied that your defense counsel's advice is in your best interest?"[12] Appellant replied,

---

[3] R. at 64.

[4] Appellate Ex. II at 5-6.

[5] Appellate Ex. II at 5.

[6] R. at 67.

[7] R. at 67.

[8] R. at 67.

[9] R. at 83.

[10] R. at 83.

[11] R. at 83.

[12] R. at 84.

"Yes, sir."[13] The military judge then asked, "Are you pleading guilty voluntarily and of your own free will?"[14] Again, Appellant replied, "Yes, sir."[15] Next, the military judge asked, "Has anyone made any threat or tried in any way to force you to plead guilty?"[16] Appellant responded, "No, sir."[17]

The military judge went on to ask Appellant, "Do you understand that even though you believe you are guilty, you have the legal right to plead not guilty and to place upon the government the burden of proving your guilt beyond a reasonable doubt?"[18] Appellant responded, "Yes, sir."[19]

The military judge subsequently accepted Appellant's pleas. Consistent with the plea agreement, the military judge sentenced Appellant to fifty months' confinement, reduction to paygrade E-1, total forfeitures, and a dishonorable discharge.[20]

On 12 April 2023, Appellant's case was docketed with this Court. On 7 September 2023, Appellant filed a Motion to Attach two affidavits to the record of trial: one from Appellant and another from Appellant's mother.[21]

---

[13] R. at 85.

[14] R. at 85.

[15] R. at 85.

[16] R. at 85.

[17] R. at 85.

[18] R. at 85.

[19] R. at 85.

[20] The military judge sentenced Appellant to fifty months' confinement each for Specifications 2 and 3 of the Charge, to run concurrently.

[21] The Court initially denied Appellant's Motion to Attach the affidavits, as well as Appellant's Motion to Reconsider that denial. Court Orders of 10 October 2023 (Denying Appellant's Motion to Attach) and 24 October 2023 (Denying Appellant's Motion for Reconsideration). We have since revisited this matter *sua sponte* and granted Appellant's Motion to Attach. Accordingly, the two affidavits are now part of the record and discussed in this opinion. As we ultimately conclude Appellant's assignment of error is without merit, we see no need to provide Appellee an opportunity to amend its Answer based on our granting the Motion to Attach. And, as we assume *arguendo*, not specifically conclude, that Appellant's trial defense counsel conduct was constitutionally deficient, we have not requested responding affidavits from those counsel. *See United States v. Melson*, 66 M.J. 346, 351 (C.A.A.F. 2008) (citing *United States v. Ginn*, 43 M.J. 471 (C.A.A.F. 1996)).

In the first affidavit, Appellant claims that, on the day of his guilty plea, he explained to his trial defense counsel that "[he] no longer wanted to go through with the plea deal, and preferred to go to a trial by courts martial [sic] instead."[22] Appellant further claims he spent roughly "3-4 hours" explaining to his trial defense counsel that he no longer wished to plead guilty pursuant to the agreement. Appellant describes how his trial defense counsel repeatedly attempted to convince him to change his mind and accept the agreement. Eventually, Appellant began receiving "text messages and calls from [his] mother asking what was going on and why [Appellant] had a lawyer calling her about something she had never heard about."[23] Appellant states that, after receiving these messages from his mother, he was "tired of arguing with [his] attorneys" and therefore accepted the plea agreement.[24] Appellant asserts he had specifically and repeatedly told his trial defense counsel not to contact his family about his legal situation.

In the second affidavit, Appellant's mother describes how, on the day of her son's guilty plea, she received a call from Appellant's trial defense counsel indicating her son was readying to accept a plea agreement for a "very serious crime."[25] The counsel explained that her son would most likely lose a contested trial, was facing a potential sentence of "20-40 years in prison," and his "only real choice was to take the plea deal that was being offered at that time."[26] She states this was the first she or her husband had heard of Appellant's alleged misconduct and disciplinary proceedings.

Additional facts necessary to resolve Appellant's AOE are discussed below.

## II. DISCUSSION

Appellant claims that his plea was involuntary due to his trial defense counsel's ineffective assistance. Specifically, he claims that his counsel improperly pressured him to plead guilty by "using means that violated [their] duty of confidentiality [owed] to him as their client," that is, by contacting his family

---

[22] Appellant's Mot. to Attach, App'x A at 2.

[23] Appellant's Mot. to Attach, App'x A at 2.

[24] Appellant's Mot. to Attach, App'x A at 2.

[25] Appellant's Mot. to Attach, App'x B at 1. Appellant's mother claims the attorney revealed no other information regarding the charges.

[26] Appellant's Mot. to Attach, App'x B at 1.

against his wishes.[27] We therefore begin by examining whether Appellant's claim of ineffective assistance has merit.

## A. Even assuming counsel's actions constituted deficient performance, Appellant has failed to demonstrate prejudice.

### 1. Standard of Review and Law

We review claims of ineffective assistance of counsel de novo.[28] "The Supreme Court has set a high bar for an appellant to prevail on such a claim."[29] The appellant must show both that: (1) his counsel's performance was deficient, that is, fell below an objective standard of reasonableness; and (2) but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different.[30]

To establish the first prong, an appellant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[31] This presumption "is rebutted by a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms."[32]

Under the second prong, even when there is deficient performance, it must be so prejudicial "as to indicate a denial of a fair trial or a trial whose result is unreliable."[33] The appellant must show that, but for the deficient performance, there is a reasonable probability that the outcome would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a substantial, not just conceivable, likelihood of a different result."[34]

---

[27] Appellant's Br. at 11.

[28] *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F 2015).

[29] *Id.* at 371.

[30] *Id.* (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[31] *Strickland*, 466 U.S. at 689.

[32] *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citation omitted).

[33] *Id.* at 473 (citation omitted).

[34] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citations omitted) (cleaned up).

In the context of a guilty plea, we apply the same two-part *Strickland* test, but the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[35] An appellant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[36]

"[E]ven if counsel's performance was deficient, [A]ppellant must also meet the prejudice prong under *Strickland.*"[37] Thus, "if we conclude that any error would not have been prejudicial under the second prong of *Strickland*, we need not ascertain the validity of the allegations or grade the quality of counsel's performance under the first prong."[38]

*2. Analysis*

The present facts raise several questions: Was contacting Appellant's family a breach of confidentiality within the meaning of applicable professional responsibility rules? And, if so, did the violation amount to constitutionally deficient performance?

We need not resolve these questions here, as we start and end our analysis with *Strickland*'s second prong.[39] Assuming *arguendo* the answer is "yes" to both questions, we reach the same conclusion: that Appellant has not met his burden of showing that, but for his trial defense counsel's action, it was *reasonably probable* that he would have pleaded not guilty.

It is simply not reasonable to believe Appellant's claim given, *inter alia*, the amount and nature of the evidence against him. In addition to his detailed confession, the Government found thousands of images of child pornography on Appellant's Thinkpad and online accounts. Along with these disturbing images, many of which he kept in a folder labeled "Gucci Stuff, were found Appellant's equally disturbing search terms."[40] Based on the charged offenses, Appellant faced a maximum of 30 years' confinement. In light of this, Appellant's plea agreement provided him significant protections. We simply cannot see as

---

[35] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[36] *Id.*; *see also United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000).

[37] *Alves*, 53 M.J. at 289.

[38] *United States v. Saintaude*, 61 M.J. 175, 179-80 (C.A.A.F. 2005).

[39] For purposes of our analysis, we will assume Appellant's allegations to be true. It is not necessary for us to--and we do not--reach a conclusion regarding whether trial defense counsel's actions violated client confidentiality or other professional responsibility rules.

[40] Pros. Ex. 1 at 2.

reasonably probable that Appellant would have foregone these benefits but for the phone call Appellant's counsel made to his mother.

## B. Appellant's guilty plea was voluntary.

Appellant's brief combines elements of ineffective assistance of his counsel and voluntariness of his pleas. Having concluded that Appellant's claim fails on the first basis, we next examine his claim on the second: Did counsel's contacting Appellant's family, along with pressuring him to accept the plea agreement and plead guilty, somehow overcome Appellant's will and render his plea involuntary? Appellant states he felt he had no other choice but to accept the plea agreement and plead guilty. But the record clearly shows otherwise.

### 1. Standard of Review and Law

The voluntariness of a guilty plea is a question of law, and one that we review de novo.[41] "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."[42]

### 2. Analysis

First, Appellant's claim that he wanted to go to trial but was forced by his counsel to plead guilty is directly contradicted by his responses to the military judge's thorough questions during the *Care* inquiry.[43] Under oath before a neutral judge, Appellant stated—twice—that he was satisfied with his counsel's advice. He affirmed his understanding that he was free to withdraw from the plea agreement. He stated that he was neither threatened nor otherwise forced to enter into the plea agreement and that he did so of his own free will. He indicated he understood the meaning of his pleas, including the rights he gave up by pleading guilty. And he unequivocally told the military judge he was pleading guilty voluntarily and of his own free will.

---

[41] *Marshall v. Lonberger*, 459 U.S. 422 (1983).

[42] *Brady v. United States*, 397 U.S. 742, 755 (1970) (citation and internal quotation marks omitted).

[43] *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

Second, Appellant makes no claim of ignorance, confusion, or mistake that would somehow reconcile his in-court answers with his present claim of involuntariness. When Appellant answered the military judge's questions, he was fully aware of all the facts he now claims rendered his plea involuntary.

Against this testimony we have only Appellant's sworn affidavit—made more than nine months after trial. We have no trouble concluding his claim of involuntariness is without merit.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[44]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[44] Articles 59 & 66, UCMJ.