# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**D.C. KING, A.Y. MARKS, B.T. PALMER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JONATHAN A. LOPEZ**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201400289**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 15 April 2014.
**Military Judge:** Col J.K. Carberry, USMC.
**Convening Authority:** Commanding General, III Marine Expeditionary Force, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** LtCol J.M. Hackel, USMC.
**For Appellant:** Philip D. Cave, Esq.; Maj John J. Stephens, USMC.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN; Capt Cory A. Carver, USMC.

**29 February 2016**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PALMER, Judge:

In a mixed plea case, a military judge, sitting as a general court-martial, convicted the appellant, pursuant to his plea, of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. A panel of members with enlisted representation sitting as a general court-martial, convicted the appellant, contrary to his pleas, of one specification of rape and one specification of assault consummated

by a battery, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920 and 928.[1]  The members sentenced the appellant to seven years' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged and, except for the discharge, ordered it executed.[2]

The appellant raises three assignments of error (AOE):

(1) That the military judge erred in excluding evidence under MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.);

(2) That the evidence is legally and factually insufficient to support his convictions; and

(3) That the appellant's trial defense counsel were ineffective.[3]

After careful consideration of the record of trial, the appellant's AOEs, and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant's wife, JL, was the victim in all the charged offenses.  JL moved to Hawaii in January 2011 and joined the appellant who was stationed aboard Marine Corps Base Hawaii. While awaiting assignment to base housing, the appellant and JL lived with a fellow Marine, JT, and his wife, DT, sleeping on an air mattress in a downstairs living room.  During an evening in February 2011, the appellant and JL argued while walking to JT's house from the gym.  The argument became so heated that the appellant and JL separated and took different routes back to the house.  The argument continued inside the residence and when, according to JL's testimony, she tried to leave, the appellant grabbed her, held her down, and forcibly raped her.  These acts, which comprised the rape specification under Charge I, ended when the appellant heard the footsteps of JT and DT coming down the stairs.[4]  JL did not say anything about the assault to JT or DT because, she testified, she was ashamed and the event was "none of [DT's] business."[5]

---

[1]  The appellant was found not guilty of a third specification of a February 2011 battery.

[2]  On 30 April 2015, we set aside the initial CA's action after finding plain error and prejudice stemming from a defective staff judge advocate's recommendation.  We deferred resolution of the appellant's assignments of error and returned the case to the Judge Advocate General for remand to an appropriate CA for new post-trial processing. *United States v. Lopez*, No. 201400289, 2015 CCA LEXIS 164, unpublished op. (N.M.Ct.Crim.App. 30 Apr 2015) (per curiam).  On 14 October 2015, the CA again approved the sentence and except for the punitive discharge ordered it executed.  Following an opportunity to file supplemental briefs and assignments of error, on 5 January 2016, the petitioner notified this court that he does not desire to file additional pleadings.

[3]  The appellant raises this AOE pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4]  Record at 116-18.

[5]  *Id.* at 137-40.

2

In March 2011, the appellant and JL moved into their own on-base house. In August 2011, during the course of another angry argument, the appellant dragged JL to their couch and choked her with his hand. This battery was the basis of Specification 2 of Charge II, to which the appellant pleaded guilty.[6]

During September 2011, JL reported her February 2011 rape allegations to the Naval Criminal Investigation Service. But then, after learning she was pregnant and moving back home to Texas, JL dropped the charges because she "wanted to give [the appellant] a chance."[7] Between December 2011 and December 2012, the appellant (who was still stationed in Hawaii) and JL would occasionally visit each other. In December 2012, during a stateside visit, JL testified that she and the appellant were arguing while she sat on her bed in her parents' house. When she told the appellant to leave, he got on top of her and grabbed her head with his hands. When she screamed at him, the appellant punched her along her neck and jaw. The appellant immediately apologized, said the punch was accidental, and thereafter JL "pretended like everything was okay" to her parents.[8] This battery comprised the basis of Specification 3 of Charge II.

By May 2013, JL had filed for divorce. Upon learning of the divorce, during May and June 2013, the appellant made several incriminating statements in various text messages to JL, which ultimately were admitted into evidence without objection. These text messages include statements wherein the appellant told JL: "I will never lay a hand on you again[.] I have an anger problem[.]"; "I laid a hand on you because I didn't know what to do[.]; I did accidentally hityou (*sic*)[.]"; "I haven't beat or strangled or grabbed you since you left me[.]"; "I am sorry [JL] sorry I raped you[.]"; "I am sorry I never took responsibility for the rape."; "Please I ask you to not report me."; "Don't ever want to hit you again…that time in December I was trying to calm you down."; and finally, "[a]lso, I am terrified of jail."[9]

The Government also presented the testimony of a forensic psychology expert. The expert, who never interviewed or met JL, testified that it was common for sexual assault victims to remain in relationships with their perpetrators, and that it was common for victims to delay their reporting or to not report at all.

The appellant took the stand in his defense. With regard to the February 2011 rape allegation, he agreed that he and JL had an argument, but he testified she actually left the house and upon her return, they kissed and then engaged in consensual sex on the air mattress in the living room. They stopped when they heard JT and DT coming down the stairs.[10] And, with regard to the December 2012 battery allegation in JL's parent's house, the appellant denied he

---

[6] *Id*. at 91-94. The members were not advised of this guilty plea until after findings.

[7] *Id*. at 120.

[8] *Id*. at 121-22.

[9] Prosecution Exhibits 5 and 6.

[10] *Id*. at 187-88.

struck JL during the argument.  He testified she was yelling, throwing his clothes into his luggage, and was slapping him.  He said he only hugged her to calm her down and held her wrists to prevent her from slapping him.[11]

The appellant admitted he sent the May/June text messages.  He testified he sent the texts because "I was so afraid of losing my wife and daughter…I was willing to say anything to try to see them [and] it was just out of desperation. . . .  I thought she would text me back if I apologized for everything."[12]  He further testified he did not intentionally hit his wife and that he did not rape his wife.

## I.  Exclusion of Evidence Under MIL. R. EVID. 412

The appellant asserts the military judge abused his discretion by excluding the following evidence under MIL. R. EVID. 412: (1) cross-examination of JL regarding "fetish handcuffs" and "bondage tape" which the appellant says she asked him to purchase; (2) cross-examination of JL regarding "rough sex" with the appellant prior to the February 2011 rape; and (3) cross-examination of JL regarding a Facebook message she sent to the appellant discussing "rough/dirty sex."[13]  The appellant argued at trial and on appeal that this evidence was relevant to show JL consented to the sexual activity that formed the basis for the February 2011 rape charge or, alternatively, the appellant had a reasonable mistake of fact as to JL's consent.  At trial, after conducting a closed hearing under MIL. R. EVID. 412, the military judge denied the motion.

### Analysis

We review the military judge's ruling to exclude evidence pursuant to MIL. R. EVID. 412 for an abuse of discretion.  *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010).  We review the findings of fact under a clearly erroneous standard and the conclusions of law *de novo.  Id.* The abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."  *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citations and internal quotation marks omitted).

Under MIL. R. EVID. 412, evidence offered by an accused to show that the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions, only two of which the appellant argues apply to his case: One, evidence of specific instances of the victim's sexual behavior to prove her consent, and two, evidence "the exclusion of [which] would violate the constitutional rights of the accused."  MIL. R. EVID. 412(b)(1)(B) and 412(b)(1)(C).

If there is a theory of admissibility under an exception, the military judge, before admitting the evidence, must conduct a balancing test as outlined in MIL. R. EVID. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011).  The test is whether the

---

[11]  *Id.* at 188.

[12]  *Id.* at 189.

[13]  Appellant's Brief of 2 Jan 2015 at 9; Appellate Exhibit III at 1.

evidence is "relevant, material, and [if] the probative value of the evidence outweighs the dangers of unfair prejudice." *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011) (citation omitted). Relevant evidence is any evidence that has "any tendency to make a fact more or less probable than it would be without the evidence." MIL. R. EVID. 401. Evidence is material if it is "of consequence to the determination of appellant's guilt[.]" *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted).

> In determining whether evidence is of consequence to the determination of Appellant's guilt, we consider the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to the issue.

*United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

If evidence is relevant and material, it must be admitted where its probative value outweighs the danger of unfair prejudice to the alleged victim's privacy. MIL. R. EVID. 412(c)(3). *United States v. Sanchez*, 44 M.J. 174, 178 (C.A.A.F. 1996). "Those dangers include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Ellerbrock,* 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The party intending to admit evidence under MIL. R. EVID. 412 has the burden of proving the evidence is admissible under the rule. MIL. R. EVID. 412(c)(3); *United States v. Banker*, 60 M.J. 216, 223 (C.A.A.F. 2004).

We find the military judge did not abuse his discretion when limiting the cross-examination of the victim. First, with regard to the handcuffs and bondage tape, the record indicates that JL did not ask the appellant to purchase those items, that JL and the appellant never actually used them, and, most importantly, that the appellant did not buy the handcuffs and tape until November 2012, some 21 months *after* the date of the charged rape.[14] Additionally, the remaining assault charges occurred during heated arguments in which the appellant choked and punched his wife, with neither event involving bondage nor any sexual activity whatsoever. Thus the evidence, even if we assumed it was relevant, has bearing only on the February 2011 rape charge. Finally, as part of his ruling on the MIL. R. EVID. 412 motion, the military judge noted, and the appellant's defense counsel agreed, the handcuffs and tape were not relevant because they were purchased so long after the date of the charged rape.[15] We too agree. Taken together, we find the military judge did not abuse his discretion ahen he found evidence related to those items to be neither relevant nor material. *Ellerbrock*, 70 M.J. at 318.

We next address the appellant's assertion that the military judge erred when he prevented the trial defense counsel from cross-examining JL on her prior sexual behavior, which he characterized as "rough, dirty" sex. In support of his MIL. R. EVID. 412 motion, the appellant testified that prior to the alleged February 2011 rape, he and JL frequently engaged in consensual

---

[14] Record at 24.

[15] *Id*. at 44.

sex that he described as "dominating, aggressive, [with] forcible spanking," and involving "name calling," "tying up," and wherein he would occasionally choke JL during sex.[16]  He further stated JL liked it when he "ripped off her clothes."[17]  However, the appellant's description of the alleged February 2011 rape contained no mention of any such activities, testifying that the encounter began with "kissing [and] hugging," that he did not "grab her," the sex was in the "missionary position," that there was no choking, that they used no "bondage or restraints," that he did not use any name calling language, that he "slipped . . . in" a spank and that the only thing he would describe as rough was when he took off JL's shorts, which he clarified as meaning he took them off "fast."[18]

By contrast, when asked to characterize their previous "rough sex" encounters, JL testified that they were entirely consensual, loving, proceeded by foreplay, focused more on different sexual positions, not violent, and would not occur in the aftermath of arguments.[19]  She described the February 2011 incident as "completely different from start to finish."[20]  She called it an attack that began when she ran to leave the house during an argument.  She testified the appellant grabbed her from behind, lifted her off the floor, and carried her back into the living room.  As she tried to fight him off, she testified that he moved her head from side to side to resist his attempts to kiss her, that he forced her legs open, pinned her down with his upper body, and forcibly removed her shorts before penetrating her with his penis.[21]

In denying the defense motion, the military judge noted JL was more credible than the appellant, and found significant differences between JL's description of their previous consensual sexual interactions and the events of the alleged rape.  Given those differences, the military judge determined that the evidence of her prior sexual behavior was not relevant, that the defense did not establish a basis for its admission, and that the evidence was inadmissible pursuant to MIL. R. EVID. 412.[22]  Although the military judge did not make formal findings of fact, he did note the activity on the night of the charged rape differed from their prior sexual behaviors in that it was "marked by an absence of foreplay . . . was violent and nonconsensual in nature."[23]

Although we analyze the MIL. R. EVID. 412 motion and evidence differently than the military judge, we ultimately reach the same conclusion.  We find the evidence that JL and the

---

[16] *Id*. at 29, 32-34, 39.

[17] *Id*. at 34.

[18] *Id*. at 30, 33-34, 38-43.

[19] *Id*. at 22-23.

[20] *Id*. at 100.

[21] *Id*. at 99-100, 116-17, 131-32.

[22] *Id*. at 44, 101.

[23] *Id*.

appellant frequently engaged in aggressive sex was, to some degree, both relevant and material. Here the appellant freely admitted sexual intercourse occurred, but argues that it was either consensual or that he mistakenly believed JL was consenting to aggressive sex that took place. As such, evidence of the manner in which they previously engaged in consensual rough sex might have some tendency to make the existence of consent "more probable . . . than it would be without the evidence." MIL. R. EVID. 401. Evidence of consent, or the appellant's mistake of fact as to consent, is material because, if true, it would be a defense and therefore be of direct "consequence to the determination of appellant's guilt." *Dorsey*, 16 M.J. at 6.

Even though we accord the evidence of prior sexual behavior some limited weight as to relevance and materiality, we find it insufficiently probative to overcome the danger of unfair prejudice.[24] MIL. R. EVID. 403; *Gaddis*, 70 M.J. at 256. First, as noted by the military judge, significant factual disparities exist between JL's description of their consensual "aggressive" sex and that of the appellant. Second, the military judge who heard the testimony of both, found JL to be "compelling and credible" and "significantly more credible than . . . the [appellant].[25] Most convincing however, is the fact the appellant's account of the February 2011 activity did not even match his own description of aggressive sex. As discussed *supra,* he described an encounter that except for a single spank and removing his wife's shorts quickly, was largely benign and not--as he apparently hoped to draw out on cross-examination--one of their consensual aggressive/rough sexual sessions. As such, his own description of the event negated his own mistake of fact as to consent argument and thus renders the evidence of prior sexual behavior "marginally relevant" at best. *Ellerbrock*, 70 M.J. at 319.

Finally, the above analysis and conclusion also resolves the appellant's third MIL. R. EVID. 412 argument, which asserted the military judge erred by denying cross-examination of JL on Facebook messages between her and the appellant discussing rough/dirty sex. Even if messages were relevant and material, we similarly find the probative value of the evidence does not outweigh the danger of unfair prejudice in this case. MIL. R. EVID. 403.

Even were we to conclude that the military judge abused his discretion in limiting JL's cross-examination, we find no material prejudice to the appellant. Where evidence is erroneously excluded in violation of the Confrontation Clause of the Sixth Amendment, our review must "determine whether the error is harmless beyond a reasonable doubt." *United States v. Gardinier*, 67 M.J. 304, 306 (C.A.A.F. 2009) (citation and internal quotation marks omitted). In doing so, we look to the factors set forth in *Van Arsdall*, namely, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." 475 U.S. at 684 (citations omitted).

---

[24] We reach this holding in the exercise of our *de novo* review authority and with the understanding that we accord the military judge less deference if he does not sufficiently articulate his MIL. R. EVID. 403 balancing on the record. *United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005).

[25] Record at 44.

Although JL was the Government's only percipient witness on the rape charge and thus her testimony was highly important and not cumulative, we note the military judge did not constrain the appellant from discussing their prior sexual behavior if he chose to testify.[26] We also find substantial evidence corroborating JL's testimony, lending significant strength to the Government's case. The appellant agreed he engaged in sexual intercourse with JL on the date and location as alleged by the Government, leaving only use of force and consent as issues in contention. We resolve both issues in the Government's favor largely aided by the appellant's admissions to losing control, having a temper, and having anger problems. More importantly, he apologized to JL, stating in a text message that he was "sorry I raped you" and then, almost two weeks later, telling her again he was "sorry I never took responsibility for the rape."[27] Although the appellant testified he only apologized for the rape in hopes JL would talk to him and to save his marriage, the members found that explanation unpersuasive.[28] Given the overall strength of the Government's case balanced against the marginal exculpatory value of JL's testimony had cross-examination not been limited, we find that any error was harmless beyond a reasonable doubt.

## II. Legal and Factually Sufficiency

The appellant claims the evidence is legally and factually insufficient to support the members' guilty findings. Specifically, the appellant argues his admissions to his wife were prompted by a desire to save his marriage and JL's allegations of rape and battery were motivated by her desire to incriminate the appellant to gain sole custody of their daughter. Additionally, the appellant argues that JL consented to the sexual encounter in February 2011, that she did not adequately resist, and that if she did not consent, the appellant possessed a mistake of fact as to her consent. We disagree.

We review questions of factual and legal sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). In weighing questions of legal sufficiency, the court is "bound to draw every reasonable inference from the evidence in the record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The test for factual sufficiency is "whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

---

[26] *Id*. at 101.

[27] PE 5 at 1, 4-5; PE 6 at 1, 2, and 3.

[28] Record at 189-90.

**Analysis**

To establish the appellant's guilt of the specification under Charge I, the Government was required to prove beyond a reasonable doubt that the appellant caused JL to engage in a sexual act by using force, to wit: holding her down against her will and penetrating her vagina with his penis. The elements of rape under Article 120, UCMJ, are that the appellant committed a sexual act upon another person by "using force against that other person." MANUAL FOR COURTS-MARIAL, UNITED STATES (2012 ed.), Appendix 28, ¶ 45a(a)(1). A sexual act is defined as "contact between the penis and the vulva . . . involving . . . penetration, however slight[.]" *Id*. at ¶ 45a(t)(1)(A). "The term force means action to . . . overcome or prevent another's resistance by . . . physical violence, strength . . . applied to another person , sufficient that the other person could not avoid or escape the sexual conduct." *Id*. at ¶ 45a(t)(5).

To establish the appellant's guilt of Specification 3 under Charge II, the Government was required to prove, beyond a reasonable doubt, that the appellant unlawfully struck JL on her face with his fist. The elements of assault consummated by a battery under Article 128, UCMJ are: (1) that the accused did bodily harm to a certain person; and (2) that the bodily harm was done with unlawful force or violence. MCM, Part IV, ¶ 54b(2). The "bodily harm . . . must be done . . . without the lawful consent of the person affected [and is defined as] any offensive touching of another, however slight." *Id*. at ¶ 54c(1)(a).

Here, we find the evidence in the record, described *supra*, sufficient to prove both charged offenses. JL's testimony describing both the rape and the battery, when combined with the appellant's text message admissions to both acts, was sufficient to prove the appellant's guilt and to disprove JL's consent or the appellant's mistake of fact as to consent. RULES FOR COURTS-MARTIAL 916(b)(4) and (j), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 54c(1)(a).

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

## III. Effective Assistance of Counsel

The appellant alleges his trial defense team was ineffective because: 1) they failed to fully pursue JL's motive to fabricate testimony to gain an advantage in her pending child custody dispute with the appellant; 2) they failed to call crucial defense witnesses: and, 3) they failed to request a mistrial after JL mentioned a knife during her sentencing testimony.

**Analysis**

We review "questions of deficient performance and prejudice *de novo*." *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citations omitted). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his

counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Counsel are presumed to be competent. *United States v. Cronic*, 466 U.S. 648, 658 - (1984). This presumption is rebutted only when there exists a showing of specific errors made by defense counsel that are unreasonable under prevailing professional standards. *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005); *see also Strickland*, 466 U.S. at 688 (finding that the Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms").

The appellant has not met his burden of demonstrating his trial defense counsel were ineffective. First, the appellant's claim his defense team did not fully pursue JL's motive to falsely accuse the appellant is not supported by the record. Indeed, trial defense counsel successfully placed this issue before the members during JL's cross-examination, wherein she admitted she was willing to "drop the charges if [the appellant] would leave us alone" and that if he left them alone she was "willing to give him visitation as we had discussed with our divorce lawyers[.]"[29] Having thus elicited this testimony from the Government's most important witness, the appellant's trial defense then argued JL's allegations were motivated by the child custody battle and pending divorce. We find trial defense counsel adequately pursued this motive to fabricate and that their actions were not unreasonable under prevailing professional standards. *Davis*, 60 M.J. at 473.

Second, the appellant proffers no information as to the expected testimony of the appellant's mother, sister, and JL's father, or how that testimony would have demonstrated JL's motive to fabricate. As such, the appellant has not demonstrated prejudice as required by *Strickland* and therefore does not provide a basis upon which we can grant relief. *See United States v. Perez*, 64 M.J. 239, 244, (C.A.A.F. 2006) (failing to find prejudice for ineffective assistance when the appellant did not provide specificity as to what the witnesses would have said if called to testify at trial).

Lastly, the trial defense team's decision to not seek a mistrial when JL mentioned, during her sentencing testimony, that she heard the appellant, through a closed bathroom door, open a knife, was neither deficient performance nor did it result in prejudice. The trial counsel, who was examining the witness, immediately interrupted her and asked JL to refrain from discussing the knife. Before he could finish, the military judge interjected, directed the members to disregard any reference to the use of a knife, explained the appellant had not been found guilty of any offense involving a knife, and then ensured each member would follow his instruction. Further, he admonished the trial counsel to limit his sentencing case to offenses before the court-martial and told JL to limit her answers to the questions asked.[30]

A military judge may declare a mistrial when he deems it "manifestly necessary in the interest of justice because of circumstances…which cast substantial doubt on the fairness of the

---

[29] *Id.* at 148-49.

[30] *Id.* at 241

10

proceedings." R.C.M. 915(a). A "mistrial may be appropriate when . . . a curative instruction would be inadequate," R.C.M. 915(a), Discussion, and "is a drastic remedy . . . reserved for only those situations where the military judge must intervene to prevent a miscarriage of justice." *United States v. Garces*, 32 M.J. 345, 349, (C.M.A. 1991) (citations omitted). We find the military judge's immediate corrective action obviated any need for trial defense counsel to lodge any objection, much less seek a mistrial. We further believe, had trial defense counsel requested a mistrial, his request would properly have been denied. Trial defense counsel's performance on this issue was not deficient, did not result in prejudice to the appellant, and did not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688.

## Conclusion

The findings and the sentence are affirmed.

Senior Judge KING and Judge MARKS concur.

For the Court



R.H. TROIDL
Clerk of Court

11