# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

v.

## TAMIRA C. DICKENS
## CORPORAL (E-4), U.S. MARINE CORPS

## NMCCA 201300025
## SPECIAL COURT-MARTIAL

**Sentence Adjudged**: 29 November 2012.
**Military Judge**: Col James C. Carberry, USMC.
**Convening Authority**: Commanding Officer, MAG-24, 1st Marine Aircraft Wing, MCBH, Kaneohe Bay, HI.
**Staff Judge Advocate's Recommendation**: Capt J.A. Sautter, USMC; **Addendum**: LtCol J.M. Henry, USMC.
**For Appellant**: LT Carrie Theis, JAGC, USN; Capt Michael Berry, USMC.
**For Appellee**: LCDR Keith Lofland, JAGC, USN; LT Ann Dingle, JAGC, USN.

### 22 April 2014

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

MITCHELL, Senior Judge:

A military judge sitting as a special court-martial convicted the appellant, contrary to her pleas, of two specifications of disrespect towards a noncommissioned officer, one specification of assaulting a noncommissioned officer, one specification of failing to obey an order, one specification of resisting apprehension, and two specifications of disorderly

conduct in violation of Articles 91, 92, 95, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 892, 895, and 934. The military judge sentenced appellant to 195 days' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed.

In her initial brief of 8 March 2013, the appellant submitted two assignments of error averring: (1) that the military judge abused his discretion by failing to dismiss the court-martial because it violated Article 23(b), UCMJ; and, (2) that the evidence presented at trial was neither factually nor legally sufficient to support the conviction for a violation of Article 134, UCMJ, (Charge IV, Specification 1) where no evidence was offered on the terminal element.[1]

On 2 July 2013, the appellant submitted a supplemental brief with eight additional summary assignments of error[2] alleging: (3) that the evidence is factually and legally insufficient to support all charges and specifications; (4) that the appellant's sentence is inappropriately severe; (5) that the appellant's attorney who represented her before the Initial Review Officer was ineffective; (6) that she received ineffective assistance of counsel at trial; (7) that her right to a speedy trial was violated;(9) that the military judge essentially became another prosecutor; and, (10) that the cumulative effect of these errors effectively denied the appellant her right to due process.

After careful examination of the record of trial and the pleadings of the parties, we are satisfied that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Background

In March 2012, the appellant submitted a chit through her chain of command requesting 25 days leave to provide for her ailing grandmother. The request was denied by her commanding officer (CO) and the appellant was subsequently instructed by

---

[1] The appellant was charged with a Clause 1 violation alleging that the misconduct was prejudicial to good order and discipline.

[2] Assignment of error three through 10 were submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

her command sergeant major (CSM) to provide documentation of her grandmother's illness. Record at 136. The appellant requested mast and on 3 April 2012, met with her CO, executive officer (XO), and CSM to discuss her denied leave request. According to the appellant, although this was the first time the CO had met her, he indicated that he had heard of her reputation and further explained that he had in his possession a "litigation package" referring to her suspected drug use. *Id.* He further stated that only model Marines deserve 30 days' leave and that she wasn't a model Marine. Her CO additionally stated that he had enough evidence to "lock [her] up and throw [her] back in the brig." *Id*. at 136, 374.

On 12 April 2012, the CSM called the appellant to his office in the command suite to take care of some pending paperwork. During this meeting, according to the CSM, the appellant got upset, stood uncomfortably close to him in a manner he viewed as aggressive, and started spouting obscenities about the noncommissioned officers within the unit. The CSM, noticing that the appellant was upset and not pleased with her tone and deportment, attempted to defuse the situation by asking her to leave his office and wait in the hallway so she could calm down. Upon leaving the CSM's office, the appellant slammed the door and continued to shout obscenities as she left the command suite. The CSM called for her to come back multiple times, but she ignored him. The CSM then sent an email to the CO and XO indicating that the appellant was "completely out of control and has ZERO respect for authority." Appellate Exhibits XVII at 9 and XXIX at 1-2. The CSM further indicated that he was taking action, in accordance with the CO's previous instructions, and placing the appellant in the brig. *Id*. The XO, acting as the CO because the latter was in a temporary additional duty status out of the area, ordered the appellant to submit to a probable cause urinalysis, which she refused. The XO then ordered her into pretrial confinement. Additional pertinent facts are provided as necessary to discuss the appellant's assignments of error.

**The Accuser Concept**

In her initial assignment of error, the appellant avers that the military judge abused his discretion by not dismissing her court-martial because it was improperly convened.[3]

---

[3] The appellant did not raise the presence of unlawful command influence (UCI), actual or apparent, during her court-martial process, on appeal, or at the trial level. The Government, in its answer to the appellant's assignments of error, seems to conflate UCI with the prohibition against an

3

Specifically, she alleges that her CO had a personal rather than an official interest in her prosecution thus making him a "type three" accuser.[4] We disagree.

At trial, the defense filed a motion to dismiss the charges, averring that the CA was an accuser as defined in Article 1(9), UCMJ, and as such was prohibited by Article 23(b), UCMJ, from convening her court-martial. The appellant argues that her CO's interest in her prosecution became personal when, during her request mast, he yelled at her and threatened to put her in the brig because of suspected drug use. The appellant avers that her request mast to discuss the denial of her leave request to tend to her ailing grandmother had nothing to do with her alleged misconduct. She contends that her CO's angry response to her demonstrated that his interest in seeing her court-martialed was personal vice official.[5] Appellant's Brief at 8.

**The Law**

The question of whether a CA is an "accuser" under Article 1(9), UCMJ, is a question of law that we review *de novo*. *United States v. Asby,* 68 M.J. 108, 129 (C.A.A.F. 2009) (citing *United States v. Conn*, 6 M.J. 351, 354 (C.M.A. 1979)). Article 1(9) defines an accuser as:

(1)  One who signs and swears to the charges;

---

accuser acting as the CA in a court-martial. Government Brief of 7 Jul 2013 at 10-13. There is nothing in the record to suggest the presence of UCI, actual or apparent, at trial or on appeal, and we therefore need not conduct a UCI analysis.

[4]  The appellant does not contend, and there is nothing in the record to suggest, that the CA signed and swore to the charges, or directed another to do so. The appellant specifically alleges that the CA acted as a "type three" accuser in that he had a personal rather an official interest in seeing that she was prosecuted. We will therefore limit our analysis accordingly.

[5]  The appellant also contends that during her 12 April 2012 meeting with the CSM, the XO, who was the acting CO at the time, witnessed the appellant's disrespectful deportment towards the CSM in the command suite, and was arguably the victim of her alleged misconduct himself by virtue of the fact that she refused his order to submit to a probable cause urinalysis. The appellant argues that the XO is a "type three" accuser as well. Since the XO did not convene the appellant's court-martial or refer the charges against her, the appellant's argument that the XO is a "type three" accuser is without merit.

4

> (2) One who directs that charges nominally be signed and sworn to by another; or,
>
> (3) One who has an interest other than an official interest in the prosecution of the accused.

An accuser is disqualified from convening a general or special court-martial, or referring charges to a court-martial. *See* RULES FOR COURTS-MARTIAL 504(c)(1) and 601(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Additionally, Article 23(b) lists who may convene general and special courts-martial and provides that "[i]f any such officer is an accuser, the court shall be convened by superior competent authority . . . ."

## Analysis

CAs are presumed to act without bias. *United States v. Brown,* 40 M.J. 625, 629 (N.M.C.M.R. 1994); *United States v. Kelly,* 40 M.J. 558, 569-70 (N.M.C.M.R. 1994). The appellant has the burden of rebutting this presumption. *United States v. Argo,* 46 M.J. 454, 463 (C.A.A.F. 1997) (citing *United States v. Hagen*, 25 M.J. 78, 84 (C.M.A. 1987)). The test for determining whether a CA is an accuser is "whether he 'was so closely connected to the offense that a reasonable person would conclude that he had a personal interest in the matter.'" *United States v. Voorhees*, 50 M.J. 494, 499 (C.A.A.F. 1999) (quoting *United States v. Jackson*, 3 M.J. 153, 154 (C.M.A. 1977)). "Personal interests relate to matters affecting the convening authority's ego, family, and personal property." *Id.*

To illustrate, the Court of Military Appeals (CMA) found that the CA had a personal interest in a court-martial where he was the victim in the case, *United States v. Gordon*, 2 C.M.R. 161 (C.M.A. 1952); where the accused attempted to blackmail the convening authority, *United States v. Jeter*, 35 M.J. 442 (C.M.A. 1992); and where the accused had potentially inappropriate personal contacts with the convening authority's fiancée, *United States v. Nix*, 40 M.J. 6 (C.M.A. 1994). The Court of Appeals for the Armed Forces has also found, under certain circumstances, that a CA's dramatic expression of anger towards an accused might disqualify the commander if it demonstrates personal animosity. *See Voorhees,* 50 M.J. at 499.

After carefully considering the appellant's assertions, the record, and the military judge's findings of fact and conclusions of law, we find no evidence of personal interest or bias on the part of the CA to disqualify him as a "type three" accuser in this case. While it is not disputed that her former

5

CO became upset with her during her request mast and informed her that he could "lock her up" and "throw her in the [brig]," this in and of itself does not establish that the CA had other than an official interest in the prosecution of appellant's case.  On this record, we do not find that the military judge erred when he concluded that there was no evidence of bias, personal interest, or animosity on the part of her former CO[6] such that he was "transformed into a de facto accuser."  *Ashby*, 68 M.J. at 130.  There is nothing in the record to suggest that his interest was anything other than official, i.e., maintaining good order and discipline within his command, which is in fact the responsibility of a CO.

We find this assignment of error to be without merit and therefore decline to grant relief.

## Legal and Factual Sufficiency

In her second assignment of error, the appellant avers that the finding of guilty on the charge of disorderly conduct is legally and factually insufficient because the Government "neither presented direct and palpable evidence that Appellant's conduct prejudiced good order and discipline, nor elicited testimony from any witness to that effect."  Appellant's Brief at 11.  We disagree.

**The Law**

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ.  The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt.  *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ.

---

[6] Colonel (Col) C was the CO when the appellant had her request mast.  On 24 June 2012, Col C retired and Col F became the CO of the appellant's command.  Thus, by the time the appellant's case went to trial in November 2012, Col C was no longer the CA.  The military judge found that any potential personal bias on behalf of the appellant's former CO had been eliminated since, at the time of time of trial, he was no longer the CA.  AE XXIX at 4.

6

**Analysis**

There are two elements to the offense of disorderly conduct in the appellant's case: (1) that the appellant was disorderly and, (2) that under the circumstances her conduct was prejudicial to good order and discipline. While the Government offered no witness to specifically testify to the impact of the appellant's behavior on the command, there is no bright-line rule requiring such evidence. The impact on good order and discipline can be determined by the trier of fact based upon the circumstances surrounding the misconduct. In amplifying the prejudicial conduct subject to this Article, the MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 60c(2)(a), states:

> "To the prejudice of good order and discipline" refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense. Almost any irregular or improper act on the part of a member of the military service could be regarded as prejudicial in some indirect or remote sense; however, this article does not include these distant effects. It is confined to cases in which the prejudice is reasonably direct and palpable.

In determining whether the appellant's conviction for cross-dressing, charged as a violation of Article 134, Clause 1, was supported by the evidence, the CMA in *United States v. Guerrero*, 33 M.J. 295, 298 (C.M.A. 1991) looked at the "time . . . the place [and] the circumstances" surrounding the appellant's misconduct in deciding whether the conduct was prejudicial to good order and discipline. In other words, the impact, prejudicial or otherwise, on good order and discipline is determined by the trier of fact based upon the evidence presented with regards to the facts and circumstances surrounding the misconduct.

The record reveals that on 12 April 2012, the appellant was upset when she left the CSM's office and slammed the door when she walked out, prompting the XO to come out of his office to investigate the disturbance. Additionally, she refused to heed the CSM's order to return to his office as she stormed out of the command suite. As she was awaiting her pretrial confinement physical, the appellant started screaming and shouting obscenities in front of other patients in the flight line medical building waiting room. She was so disruptive that a doctor located in the back of the building came out of his

7

office to tell the appellant to lower her voice.  Record at 452.
She then verbally abused police personnel who were called for
assistance, calling them "pigs" and "f***ing cops," and also
physically assaulted one of the officers by kicking him in the
chest and trying to bite him when he attempted to arrest and
handcuff her.  She was shouting so vehemently that her spittle
sprayed from her mouth.  *Id.* at 388-89, 413-16.  The appellant
resisted arrest to the point that additional police officers had
to be called to assist the on-scene officers in getting her into
the police car.  They eventually managed to strap her to a chair
and put her in an ambulance.  *Id.* at 396-400.  Finally, the
record reflects that the appellant was so disruptive that
service members attending a transition assistance program
workshop nearby, hearing the fracas, gathered outside to discern
the cause of the commotion.

After reviewing all of the evidence to include eyewitness
testimony, we are convinced that the military judge had a
factual basis to find that the appellant's conduct was
prejudicial to good order and discipline and to find her guilty
beyond a reasonable doubt.  Recognizing that we did not
personally observe the witnesses at trial, we too are convinced
beyond a reasonable doubt that the appellant's conduct was
prejudicial to good order and discipline thus satisfying Clause
1, Article 134, UCMJ.  We find the appellant's second assignment
of error to be without merit.

Additionally, we note that in supplemental assignment of
error (3), the appellant avers the findings of guilty to the
remaining charges and specifications are likewise legally and
factually insufficient.  After a thorough review of the record
we find the evidence presented at trial to be legally and
factually sufficient to sustain a guilty finding of
insubordinate conduct, disrespect towards a noncommissioned
officer, assaulting a noncommissioned officer, failure to obey
an order, resisting apprehension, and disorderly conduct.
Accordingly, we also find this assignment of error to be without
merit.

### Ineffective Assistance of Counsel at Trial

We next consider the appellant's allegation that she did
not receive effective assistance of counsel and as such did not
receive a fair trial.  Specifically, she avers[7]:

---

[7] Appellant's Motion to Attach of 1 Jul 2013, Unsworn Declaration of 8 June
2013.

(1) That her trial defense team did not allow her the opportunity to testify on her own behalf despite repeated requests to do so;

(2) That two of her witnesses weren't allowed to testify on her behalf; and,

(3) That her trial defense team was ineffective in that they forfeited her right to cross examine witnesses by allowing them to testify telephonically or read their statements into evidence and by being unprepared to argue a motion to release her from pretrial confinement.[8]

The Government did not submit an opposing affidavit to counter the appellant's post-trial declaration, contending instead that the appellant's declaration and the record do not contain sufficient evidence to overcome the presumption of competence. Government Supplemental Brief of 9 Oct 2013 at 25. We agree.

**The Law**

All service members are guaranteed the right to effective assistance of counsel at their court-martial. *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005). The test for determining ineffective assistance of counsel has two prongs: deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To meet the deficiency prong, the appellant must show his defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. To show prejudice the appellant must demonstrate that any errors made by the defense counsel were so serious that they deprived him of a

---

[8] The record indicates that Lieutenant Colonel O and Captain P testified telephonically during Article 39a, UCMJ, sessions on motions filed by the defense because they were deployed with their unit to Afghanistan. Record at 77-92; 222-34. The trial defense counsel's failure to object to the medium in which this testimony was elicited was not error nor did it deprive the appellant or her counsel the right to cross-examine these witnesses – a right the defense did in fact exercise. *See United States v. Morrison,* 13 M.J. 649, 651 (N.M.C.M.R. 1982). Nowhere in the record does it reflect that any witness was allowed to testify telephonically during the trial on the merits. Finally, based upon the record, we do not find that the trial defense team was ill-prepared or deficient in arguing the pretrial confinement motion. The appellant seems to suggest that her counsel was deficient based solely on the fact that the motion was unsuccessful. We find these arguments to be without merit and not worthy of further discussion.

9

fair trial. *Id.; United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987). Said another way, the appellant must show "there is a reasonable probability that, but for the counsel's error, there would have been a different result." *Davis* 60 M.J. at 473 (citing *United States v. Quick* 59 M.J. 383, 387 (C.A.A.F. 2004)). The proper standard for attorney performance is that of reasonably effective assistance. *Strickland*, 466 U.S. at 687. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Scott*, 24 M.J. at 188. In order to show ineffective assistance, the appellant must surmount a very high hurdle. *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997). This presumption is rebutted only by "a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms." *Davis*, 60 M.J. at 473 (citing *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)). "[S]econd-guessing, sweeping generalizations, and hindsight will not suffice." *Id.* (citations omitted).

## Failure to Call the Appellant and Other Witnesses.

The appellant contends that her trial defense team did not allow her to testify on the merits although she repeatedly requested to do so.[9] She indicates that she would have testified, *inter alia,* that the command climate was such that she feared for her life and that her command "held [her] hostage in an office with five to six higher-ups . . . and scream[ed] threats" at her. Appellant's Motion to Attach of 1 Jul 2013, Unsworn Declaration at 2. She also asserts that she would have testified that her command harassed her brother through "text messages and on the phone" and that her trial defense team would not allow two witnesses to testify on her behalf. *Id.* at 2-3. She does not however, provide this court with the information these witnesses would have provided had they testified on her behalf.

---

[9] We note that the defense raised multiple pretrial motions in which the appellant was sworn and testified on her own behalf, to include motions: (1) to suppress the results of a urinalysis; (2) to dismiss the charges based on constitutional protections against double jeopardy; (3) to dismiss the charges due to defective referral alleging the CA was a "type three" accuser; and, (4) to release the appellant from pretrial confinement. Additionally, we note that the appellant was advised that she had the right to provide a sworn or an unsworn statement during the presentencing phase of her trial and chose to provide the latter. While the appellant alleges that her trial defense team did not "allow" her to testify on the merits during her trial, her claim is not supported by the record.

10

Based on the appellant's post-trial submission and our careful analysis of the record, we find that the appellant, even assuming *arguendo* her allegations are true, has failed to meet her burden of establishing a "factual foundation for [her] claim of ineffective representation." *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000). Because the appellant's post-trial submission alleges facts that would not result in relief, we reject her claim on that basis and need not order a post-trial evidentiary hearing. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

In sum, the appellant's ineffective assistance of counsel assertions constitute nothing more than bare allegations and speculation concerning her military defense counsel's claimed errors and omissions. The record supports that the trial defense counsel team rendered adequate assistance and exercised reasonable professional judgment in the pretrial, trial, sentencing and post-trial representation they provided to the appellant. In light of the evidence in the record and the appellate filings, we conclude the appellant has demonstrated neither deficient performance nor prejudice.

## Conclusion

The appellant's remaining assignments of error have either no factual basis or are completely without merit; they require no further discussion. Accordingly, the findings and the sentence, as approved by the CA, are affirmed.

Judge FISCHER and Judge JAMISON concur.


For the Court



R.H. TROIDL
Clerk of Court